Good morning, and may it please the Court. Ravi Sitwala for Appellant First DataBank. I plan to reserve three minutes. Several manufacturers of prenatal vitamins brought separate suits across the country in a coordinated effort to burden First DataBank's speech. This appeal concerns the first filed of those cases, filed by Plaintiff Exeltis USA. Understanding that most payers only cover prescription drug products, as Exeltis states on page 16 of its brief, and fearful that some payers may choose not to cover those products if they found out that these supplement products do not, in fact, require a prescription under federal law, Exeltis has chosen to attack First DataBank's speech in order to attempt to keep that speech away from payers to regulate those payers' conduct. Counsel, why isn't this case moot? The complaint that this motion was filed about no longer exists. It's a legal nullity. And as I understand it, proceedings have continued on with the amended pleadings in the district court. So thank you for asking, Your Honor. The touchstone of the mootness inquiry is whether this court can grant effective relief. And in this case, Exeltis has conceded that the amended complaint carries forward exactly the same claims that were at issue in the original complaint. Well, that may be true of any amended complaint, but isn't there a hard and fast rule that when a complaint is amended, the earlier one ceases to have any legal effect and is gone? In this Court's decision in Lacey. It's a yes or no question. The answer is that is the general rule, but there are exceptions that this court set forth. It set forth one such exception in Lacey where the court found that that rule was formulaic and also unfair when applied in the circumstances of that case. And we respectfully submit that in this case it would also be formulaic and unfair. You could have renewed the motion. You didn't, as I understand it, with the subsequent complaint. Is that a correct understanding or not? We certainly could have filed another motion with respect to the amended complaint. Discovery is actually. You didn't, right? We have not. Okay. I would point out, however, that to the extent that this court finds that the filing of the amended complaint  we would respectfully submit that that would run contrary to the divestiture rule, which is set forth in Griggs, which is 459 U.S. 56, and which this court recognized in NRDC, which is 242 F3rd 1163 at 1166. And therefore, the filing of the complaint would not have legal significance because it would interfere with this court's jurisdiction. In fact, the Fifth Circuit was faced with a very similar situation in the case Dayton Independent School District versus U.S. Mineral Products Co., which is 906. Well, you know, if it's moot, we have no jurisdiction, period. And I don't understand that any of this was done with the specific intent to deprive us of jurisdiction, and it wouldn't anyway because you could have filed another similar motion and we'd be back in the soup. But I guess I don't understand how we get to the merits. So, Your Honor, in that case, and I'll just finish the citation, it's 906 F2nd 1059. What the court pointed out is that once an issue is joined in the appellate court, the district court has no jurisdiction over that issue and can't take action that would interfere with the appellate court's jurisdiction over the issues that have been joined. And here, where there was an appeal that has been perfected and fully briefed, no action in the district court can then interfere with this court's jurisdiction. And so we would submit that to the extent that the court finds that the filing of the amended complaint would render this particular appeal moot, that that filing, at least as to the State claims, would be rendered a nullity. And therefore, this court could proceed because the initial complaint would remain the operative complaint, at least with respect to those State court actions. And I would point the court to the Fifth Circuit's decision that I just cited on that point. However, still ---- Well, are you saying then that you're not allowed, you would not be allowed to file an anti-slap motion against the amended complaint in the district court? I'm sorry, Your Honor. To the extent that the court was without jurisdiction to permit that filing, then there is no amended complaint, at least as to the State claims. And then we could not file an anti-slap motion because those claims remain before this court on this appeal. But you agreed that the complaint could be filed. He did. And other proceedings are taking place. Am I right about that? That's true, Your Honor. We did move before the district court and before this court for a stay because we were concerned that proceedings would continue. However, we did not prevail. They have continued. So the case is moving along on an amended complaint that is operative. This complaint doesn't exist. So I guess I don't really understand. Even if we granted you relief on a nonexistent complaint, that it would have no effect with respect to the things that are ongoing on a different complaint. We believe that if the court were to find in our favor, it would grant us effective relief and that the court below, based on this court's mandate, would require a conformed complaint to be filed. So it would be an advisory opinion. It would not because the very claims, and as Excelltis represented in seeking to amend its complaint, this was not an amendment at the outside of the case to change claims, to add claims. It preserved exactly the same claims and simply added facts that were discovered through discovery, but did not change the theories or the claims themselves, which Excelltis. Well, that's not necessarily true. It seems to me that if I'm correct about the record, adding that Q classification could make it something of a different case. So adding that theory, which is a separate theory than the O theory that the court below found not to be moot, certainly adds a separate theory under the same causes of action. However, as the California Supreme Court has held in Barrel v. Schnitt, which is 376P3-604, the anti-SLAP statute can apply to strike part of a claim. It does not need to strike the entire claim. So here, under the workings of the anti-SLAP statute, it would be entirely proper for this Court to strike the claims as to the O code, which, as I said, remain live before the district court by Excelltis' own admission and by a comparison of the two complaints. Those claims are very much alive in this case. We pointed to the Inri San Bernardino case in our letter brief to the court, in which the district court reached exactly that conclusion, where the amended complaint carried forward exactly the same claim in theory, that the district court could still decide a pending appeal from a bankruptcy court decision. Now, because of court rules, I can't cite. There's an unpublished decision from this court from 2005, which holds the same thing. However, I can't. You can cite it. It's not binding. It's permissible to cite it for its persuasive power, if any. The citation is the Forest Service employees. Is this in any of your papers? It's not. Well, then put it on paper afterwards and give it to the clerk and to opposing counsel. Okay. Thank you. Thank you. Would you object to our ruling that this appeal is moot, if it meant you could file a renewed anti-SLAPP motion as part of your summary judgment motion? We've already filed the summary judgment motion. If the court were to rule that the appeal is moot, I suppose the procedure would be to vacate so much of the district court's opinion as discussed the SLAPP motion and then provide us leave to refile the motion as to the amended pleading. It seems to me that other than attorney's fees, what's to be gained by having the Court of Appeals rule on this matter when the merits of the plaintiff's case is already briefed on summary judgment? Our argument is that these claims are still alive, that they were carried forward, and that in a ruling from this court that said that, for example, that the speech at issue is not commercial speech or that the speech at issue is not false or misleading for purposes of the claims issued, would adjudicate the claims that are still alive in this case. It would not be an advisory opinion. It would grant us effective relief and would, in fact, change the status of the case below. And while the Q theory could proceed below, the theory with respect to O, which I've said many times now was carried forward, would then be not part of the case, which is the whole purpose of the SLAPP statute. Well, it's sort of like qualified immunity. It's supposed to protect you from the litigation, but the litigation is moving right along. And in any case where a stay is not granted, such as this case, that would render any appeal of the SLAPP decision a nullity and would be contrary to this court's precedent, which says that those decisions are, in fact, appealable immediately because there's a substantive immunity and therefore appellate jurisdiction under the collateral order doctrine. Well, we have a ‑‑ for one thing, the law has changed since this case was decided. That is, the motion was decided. And Planned Parenthood gives the district judge direction about how to decide these cases that that judge didn't have at the time. So, again, you know, it seems to me that in the future that the judges are going to know that either you have to grant discovery and do this as a summary judgment or you have to treat it as a Rule B6, 12B6. But here we have ‑‑ it's ambiguous as to exactly how we should evaluate the motion. And I think under Planned Parenthood, and as we argued in our briefing, that we believe that as a matter of law under Rule 12B6, the court can properly find both that our speech is not commercial and that the speech is not false or misleading. I would point the court to the Acela case as well as the Genis case that Judge Oreck decided recently, which is cited in our letter brief regarding mootness, where both courts decided on a 12B6 motion that the speech at issue, the very speech that's at issue here, is not commercial speech. And in Acela, also held, again, on a motion to dismiss, that the speech was not false. But Planned Parenthood would allow for application of the Rule 56 standard. And as I read the decision, what the court said is that the party opposing the motion must be allowed to use the procedures of Rule 56, including 56D, in order to seek discovery, and that discovery must be permitted. Here there was no request for discovery, and the plaintiff did, in fact, put in a great deal of evidence of their own. So I think it wouldn't be improper to apply Rule 56, even under Planned Parenthood. However, we also submit that there's no need to do so because we should prevail under the 12B6 standard. You have about two and a half minutes if you wanted to save some time. I will reserve the remainder of my time. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Benjamin Mundell on behalf of Exceltis USA. Before this Court can reach the merits, there are a number of threshold issues that are decisive of this appeal. Most importantly, the Court lacks subject matter jurisdiction over the appeal because it is now moot. The appeal is moot because the Court cannot order any effective relief. The only relief that was sought by First Data Bank, and the only relief that was available to it on this appeal, was a dismissal of the original complaint. But the amendment of that complaint rendered the original complaint with no legal effect. It's a nullity. So they can't obtain the relief that they sought. So this circuit and published decisions have held the challenges to complaints that have been amended. Complaints that are no longer in effect should be denied as moot. And that's the Ramirez v. the City of San Bernardino case that is cited. And the Court also, in the Liberi case, in an unpublished panel decision, dismissed an appeal as moot precisely on the facts of this case, where there was an appeal of an anti-SLAPP statute and the plaintiff amended the complaint below. So this is on all fours for that purpose with Liberi. And at bottom, what First Data Bank is asking for is for this Court to issue an advisory opinion on a complaint that is no longer in effect because it might shed light on legal issues that are still being addressed below. But any decision by this Court on either false or misleading or on commercial speech, the two major merits issues, is tethered to the complaint. The question is, does the complaint state a claim for false or misleading? And the complaint has changed significantly because of the amendment. And the amendment was not made by Excelltis alone. It was made upon, first, the request of First Data Bank and then upon the consent of First Data Bank. So I don't think that they can argue before this Court that the District Court lacked jurisdiction to accept the amended complaint when they asked us to do it and then consented to it. And they've since moved for summary judgment on that complaint without moving under the anti-SLAPP statute when they could have, and their 60 days to move have passed. So if they thought that the second amended complaint failed to meet Rule 12b-6, failed to meet the anti-SLAPP statute, the proper course would have been to move under the anti-SLAPP statute as to the amended complaint. Instead— You certainly didn't make that argument in your brief. We did not make that argument in our brief because we had not yet had consent to file the amended complaint and the District Court had not yet accepted the amended complaint when we made our brief. This was still a live controversy. But procedurally, I'm a little confused as to what was going on here. There was a notice of appeal, right, at some point? Yes. And then when was the amendment? We amended our complaint after—the order was we filed our motion for leave to amend the complaint. First, it was opposed. Let me just take a step back. First, Adiabank filed their opening brief. Then we filed our motion to amend the complaint that was opposed. We filed—that was not yet ruled upon. We filed our brief. So it was still pending below whether we could amend our complaint. So this was going on two tracks at the same time. It was going on two tracks simultaneously. It was not until after we filed our brief that the case became moot because after we filed our brief here, First, Adiabank then consented to the amended complaint and we filed a stipulation with Judge Gilliam below that allowed—that amended the complaint upon consent. He accepted that and we ultimately filed the complaint after our brief was filed here. And that's why this was not raised in our brief until the court raised it just last week. But ultimately, the court's decision would be a mere advisory opinion because the facts have changed dramatically. The amended complaint brings substantial allegations that were not in the initial complaint. So a decision that particular pleading was insufficient as to an old complaint would not provide meaningful guidance to Judge Gilliam. But, of course, that is not—would not even be proper because the courts do not decide hypothetical questions of fact. That's just an advisory opinion. You know, it does strike me as rather peculiar that things are— have continued to proceed in the district court once the appeal was filed here. Because usually— It lacks jurisdiction. Usually the district court stops and waits for the appeal. So this is why things proceeded, Your Honor. In our original complaint, we filed—we brought both state law claims and a federal Lanham Act claim. When the district court denied the motion to dismiss, First Data Bank moved to stay and Judge Gilliam said that he was effectively staying the state law claims, but he was allowing the Lanham Act claim to proceed because there was no basis to stay the federal claim because that's not subject to the appeal. And then he said during discovery, because there's nearly complete overlap between discovery for the state law claims and the federal law claims, he was allowing discovery to proceed. So we had been operating under the premise that our state law claims were likely stayed at least—certainly as to trial and probably to summary judgment until this court decided the appeal. But then First Data Bank moved for summary judgment on those state law claims. Thereby— Well, that's what I'm wondering. Why is that possible? I believe they have at least implicitly consented to a lift of the stay, and they could do so for, you know, for their own reasons. Wait, wait. I don't know. Is that correct, that once an issue is on appeal, the district court can proceed if the parties agree to it? Is that— Well, I don't think the issue is on appeal because the amended complaint, that's the question that is proceeding below, while the issue on appeal is the original complaint. Well, no, no. I understand that. Are there state law claims in the amended complaint? There are state law claims in the amended complaint, but those differ substantially from the state law claims in the original complaint. So there has been no stay issued as to the amended complaint. Well, with or without a stay, I really am not sure how the district court can deal with those questions once they're here. It's very confusing. We're here, so I gather that this is because this is a peculiar anti-slap appeal, right? That's correct, Your Honor. Ordinarily, this wouldn't, none of this would come up. Ordinarily, none of this would come up. It's because of the inherent conflict that we're seeing between the federal rules and the anti-slap procedure, which is why members of this court have said, have raised concerns with the anti-slap statute applying in federal court. Why did you go ahead and file—I'm sorry if you weren't finished. Just why did you file this amended complaint at the time you did, knowing that this appeal was going on? We filed the amended complaint for two reasons. First, our original complaint challenged First Data Bank's plan to code our products as O or over-the-counter, which is false and misleading. And they insisted that that was the only way to code the products. After we got into discovery, First Data Bank abandoned that plan, and they went to the court and said, we're not going to code prescription prenatal vitamins as O or over-the-counter. We've come up with a different idea. We're going to code them as Q. And the Q code has problems of its own and is false and misleading in its own right. So First Data Bank suggested to the court that the proper mechanism for us to challenge the Q code would be to file an amended complaint that challenges the Q code. And we did that. Ultimately, we, after more discovery occurred, we challenged the Q code as false and misleading in an amended complaint. And we also brought additional allegations that we obtained during discovery that increased the plausibility, that add to the factual plausibility of our original complaint, both as to false and misleading of O and Q and as to commercial speech. Because at the early stage when we filed our complaint, we did not have discovery. We were operating on a very limited record based upon the allegations in our complaint and limited evidence that we were able to gather on our own for the preliminary injunction that was heard. So that's how the case started. And ultimately, the district court accepted our amended complaint upon the consent of First Data Bank. And if First Data Bank wanted to ensure that the appeal would not be moved, it should have opposed amendment on that ground because California state courts generally do not allow amendment after an appeal of an anti-slap motion. Well, would they have been able within the usual time limit to file a second anti-slap motion, though? Of course. And that's exactly precisely what they should have done because the amending of our amendment rendered the first complaint null and void. But they still have their 60 days or whatever it is. They had it. They no longer do. The 60 days have since passed. No, I understand that. Yes. We, by all accounts, expected here's our amended complaint. They would file a motion to slap the amended complaint. Judge Gilliam may have said I've already decided that issue. I'm not going to write a new opinion on it. This case, this amended complaint has even more factual allegations than before. So I said it met the standard the first time. I'm going to agree this time. But that would have perfected the issue to come up on appeal on the live and actual complaint because here any discussion that this Court has of the merits of this case would be purely advisory because commercial speech is fact-dependent. It depends upon the particular allegations in our complaint. What do we plead their database is, how it works, what it's used for. All of the factors of Caskey and other courts who have laid off commercial speech are fact-dependent. So an analysis that this Court may render about the pleadings of the first complaint under Caskey would, of course, provide anybody guidance because an opinion from this Court on an issue would provide guidance. But there's no live concrete dispute about whether the original pleading satisfies the Caskey standard. The question is about the amended completing. And this Court cannot decide about the amended completing now because it's not subject to this appeal. This is admittedly a unique procedural posture because of the anti-SLAPP statute and because of the ongoing federal claims that we have with our state law claims. But the proper way to handle this would have been to file an anti-SLAPP motion within the 60 days of our amended complaint. And the Court could have addressed any anti-SLAPP question then. If there are no further questions about the mootness, I would like to turn just briefly to another threshold issue that we submitted in a 28-J letter, if that's okay with the Court. And we submitted the Film-On case, which was also decided after Judge Gilliam's decision below, decided by the California Supreme Court, and it limited the applicability of the anti-SLAPP statute. And it held that for-profit speech that's exchanged confidentially and not part of a larger public debate does not qualify for any protection under the anti-SLAPP statute. So while the appeal is moot, if the Court does not agree with that, the other way that this case can be handled is by deciding that the anti-SLAPP statute simply does not apply. And this case is really on all fours with Film-On, which established a two-part test. First, you have to look at the content of the speech to see if the speech implicates an issue of public interest. But the second piece is you have to look at the context of the speech, and is there a functional relationship where the speech furthers the public debate or furthers the public conversation. And the First Database does not do so in any way. It's inconceivable that it does, based on the record here. It is purely confidential speech exchanged from a for-profit entity to other for-profit entities used exclusively for the reimbursement of drug claims. It is not presented to Congress, it is not presented to the FDA, it's not presented to the press or the public. There is no connection to the public debate or public conversation about any issue because the public never sees the speech at all. So this case is on really all fours with Film-On, and importantly, the attempt that First Database makes to distinguish Film-On is only to cite one case, and they cite the industrial waste case that was discussed in Film-On. And if you compare industrial waste to this case, it shows precisely why the Film-On rule applies and the industrial waste does not. In industrial waste, the speech at issue, while it was by a for-profit entity to another for-profit entity, the report that was produced there was the speech, was presented to a government body at a public hearing. So the speech was presented to a public hearing, and an employee of the defendant was at that hearing prepared to testify. About the report. Can you point to any case where a company whose business is compiling information about products, for example, product reviews or guidebooks, has been held to be engaging in unprotected commercial speech? Yes, Your Honor. The Hansenbrook Farms case from the Fourth Circuit is one such case. The case from the Southern District of New York, which involves Moody's. The case is Abu Dhabi Commercial Bank v. Morgan Stanley. There's a case, Bayer v. RJ Health from the District of Connecticut that involved a similar database. But importantly, the question cannot be answered at such a general level of compiling information like product reviews because our complaint makes very specific allegations here. This is not a general database that provides product reviews. Rather, it is a database that is sold for commercial purposes to insurance companies and other payers to make reimbursement decisions. Including a governmental payer. Including governmental payers, but also private payers. But it is used, according to our complaint, this part of the database is exclusively for that purpose. So it's under the California Supreme Court's decision in Caskey, which is the guiding case for whether the California Causes of Action, Unfair Competition Law, and False Advertising Law apply here. The question is, what is the identity of the speaker, the audience, and the content of the speech? Here, the speaker and the audience are commercial speakers and commercial audiences. And that particular speech identifies the identity of the product, the price of the product, and other commercial features, and it is used exclusively for commercial purposes. And that distinguishes this case from the case involving consumer reviews, like the Eriks case, where a consumer report can be used for many different purposes. It is not exclusively for commercial purposes, and readers of it are not exclusively commercial readers. I see my time is expiring, and if there are no further questions. Thank you. Thank you, Your Honor. Let me first point out that, as Excelltis has conceded, that this appeal stayed proceedings with respect to the state law claims. Regardless of our consent, the district court could not permit those claims to be amended or cause any change to those claims, because they would be subject to the very stay that the appeal would have occasioned. I will also point out that while Excelltis has now said that the amended complaint makes great changes to its initial complaint, what they said in their motion for leave was that the proposed amended complaint keeps those same allegations and adds more information and detail. And they said in a footnote, which is to be clear, the amended complaint does not advance any new causes of action against First Data Bank or any new legal theories in support of those claims, and goes on to say our actions are still unlawful in the same ways for the same reasons that were alleged in the initial complaint. And so I think it's clear that they intended to carry forward those claims, and they in fact did. In terms of the commercial speech question that was just raised in Caskey, I'll just briefly quote from Caskey. Caskey specifically said that commercial speech must consist of factual representations about the business operations, products, or services of the speaker made for purposes of promoting sales of or other commercial transactions in the speaker's products or services. Simply not the case here. That's what the Acela court held. That's what the Genis court held. This court in Hilton, which Judge Graber, you were on that panel, made very clear that when the speech is the product, it can't also be advertising for the product. That's exactly the case here. First Data Bank only sells the database, and the database itself cannot be advertising for itself. In terms of the Philmon case that was raised by counsel, I just point out that in that case, as counsel said, the court contrasted the industrial waste case. And what the court said is even in the industrial waste case where the speech was made privately, confidentially to one client, because it talked about the applicability of government regulations and the legality of its competitors' actions, and because that speech might change the policy of that client, that was sufficient to render the speech of public interest. Here, Exceltis alleges that our speech is not only, has huge public health consequences, but that it resulted in a discussion between Congress, between public health agencies. It's quite clear that to the extent the speech is even considered commercial at all, it would fit on the industrial waste side of that divide. Thank you.
judges: Schroeder, Graber, Lefkow